**ORTIZ OIL CO. v. LUTTES et al.**

No. 5543.

Court of Civil Appeals of Texas.
Texarkana.

June 5, 1940.

Rehearing Denied June 20, 1940.

John Davenport, T. R. Boone, and Kearby Peery, all of Wichita Falls, and Caves, Waldrop & Shaw, of Henderson, for plaintiff in error.

Clower, Bezoni & Wilson and N, E. Hendrickson, all of Tyler, and E. E. Fischer, of Houston, for defendants in error.

JOHNSON, Chief Justice.

In their fourth amended original petition on which the case was tried, J. W. Luttes and others, owners of the ⅛ royalty interest in certain oil-producing land in Rusk County known as the Shiloh Church lot, sued the Ortiz Oil Company, owner and operator of the ⅞ oil and gas leasehold interest covering the land, to recover damages for the alleged wrongful, unlawful and fraudulent conversion, by use of hidden and secret pipes, valves, devices and schemes, and the appropriation to the defendant's own use and benefit with intent to deprive plaintiffs of the value thereof of plaintiffs' ⅛ interest in more than 300,000 barrels of oil produced on the land in excess of that accounted for by defendant. Defendant filed general and special exceptions, general denial, and attached to its answer a verified statement purporting to be a complete monthly accounting of the amount and price of all the oil which it claims to have produced from the lease for each and every month from the month of May, 1932, when the well was completed, to the month of June, 1937. Defendant further pleaded that certain of the plaintiffs, namely, the Trustees of said Shiloh Church and F. D. Quinn, had accepted defendant's checks in full and final settlement for any and all oil due them, and were thereby estopped to make further claims. The cause was submitted upon special issues, in answer to which the jury found: (1) That the defendant, Ortiz Oil Company, had produced oil from said church lot land, in excess of that accounted for in its answer; (2) that the amount produced in excess of that accounted for was 275,000 barrels; (3) that the oil had been produced by the defendant in such manner as to deceive the plaintiffs as to the amount being produced; (4) that the defendant produced the oil, in excess of that accounted for, with the intent to deprive plaintiffs of their interest in same; (4-a) that the defendant caused the oil produced from the Shiloh Church lot well and oil produced by defendant from the Carlisle School lot well (owned by defendant and in which plaintiffs have no interest) to be intermingled; (5) that the defendant caused the oil being produced from said church lot well and from said school lot well to be intermingled in such manner that it could not be determined how much oil was produced from the church lot well; (6) that the defendant so intermingled the oil being produced from said two wells from the date that defendant connected them to flow through one separator, until a second separator was installed (which it is agreed was from May 1, 1932, until July 1, 1934); (7) that defendant's draft for $318.36 dated March 20, 1935, payable to E. E. Fischer, attorney for the Trustees of the Shiloh Church, was not accepted by him in full and final settlement for any and all royalty oil then due and unpaid from said well; (8) that defendant's draft for $159.-18 dated March 20, 1935, payable to N. E. Hendrickson, attorney for F. D. Quinn, was not accepted by him in full and final settlement for any and all royalty oil then due and unpaid from said well. Judgment was entered in favor of plaintiffs for their ⅛ interest in the 275,000 barrels of oil found by the jury to have been produced and converted by defendant from the church lot well in excess of that accounted for by defendant, at the

value of $1 per barrel, in the total sum of $34,375. In a separate decree the judgment further assesses damages for plaintiffs, in the sum of $813.28, being the value of ⅛ of 6,506.26 barrels of oil which the court found was shown by the uncontradicted evidence to have been produced from the Carlisle School lot well and intermingled by the defendant with the oil in which plaintiffs had an interest produced from the church lot well. From an order overruling its motion for new trial defendant excepted and gave notice of appeal and by writ of error has presented the case to this court for review.

Under its first proposition appellant contends: (1) That the jury's answer to special issue No. 5, to the effect that the defendant had caused the oil being produced from the church lot well (in which plaintiffs owned ⅛ interest) and the oil being produced from the school lot well (owned by defendant) to be intermingled in such manner that it could not be determined how much oil had been produced and converted by defendant from the church lot well, is supported by the evidence; and, since the precise amount converted is thus rendered uncertain, plaintiffs could not recover for any amount; and (2) that the jury's answer to special issue No. 2, that the defendant had produced from the church lot well 275,000 barrels of oil in excess of that accounted for, is not supported in the evidence, and for that reason judgment should have been rendered for defendant; (3) that the jury's answers to questions No. 2 and No. 5 are in irreconcilable conflict, and for that reason the trial court should have declared a mistrial. The contentions are not sustained. Briefly summarized, the evidence in support of the findings of the jury show that from May, 1932, to July, 1934, defendant intermingled the oil produced from the church lot well with oil owned by defendant being produced by the school lot well by connecting and producing both wells through one separator, a method which would prevent separately gauging or ascertaining the exact amount of oil produced from the well in which plaintiffs were interested; that they were flowing wells and required only about one hour per day to produce the "allowable"; that in April, 1934, plaintiffs discovered that defendant had installed and equipped the lease with secret flow pipes leading from the church lot well to and under a small house built by the defendant on the premises; that the floor of said house was covered with linoleum, concealing a trap door under which was hidden valves to open and close the well, which valves were in addition to the regular valves at the well; that the defendant was found producing the well at night, without flares burning, the vents not lighted, at which times oil would be flowing into the tanks and pumped into the pipe lines without being gauged; that the oil produced from the well did not require treating before being turned into the pipe lines; that defendant constructed and operated a treating plant on the premises; and in general the leasehold was mechanically equipped in the usual manner for running "hot oil"; that on two occasions it had been shut down by the State and Federal authorities; that seals used by pipe line companies in sealing tanks of oil purchased by them were found on the premises, which seals were those of pipe line companies to which defendant had not reported any sales of oil. The witness V. M. Ramsey testified that he operated a lease for the Sun Oil Company adjoining the church lot lease in question during the period of time that defendant is alleged to have committed the acts of conversion in this case; that he had been employed in the producing department of the oil business for about fourteen years; that he had been acquainted with the church lot well since it was first completed in 1932; that it was capable of producing better than 600 barrels per hour; that because of defendant's manner of operating the church lot lease he had been instructed by his company to watch that well; that it required about one hour per day to produce the allowable, through a choke, from the Sun Oil Company's well located just across the road from the church lot well; that he observed the manner and method in which the church lot well was being produced by defendant during most of the year 1934; that the church lot well would run from an hour to an hour and a half during the daytime, either in the morning or the afternoon, and then would run all night; that (specifying the particular times) he observed the well being produced each night from June 1st to August 28, 1934, with the exception of six days in June and two weeks in August that he was off the lease (making sixty-

nine days and nights that the well was observed by this witness during June, July and August, 1934); that the church lot well was capable of making better than 450 barrels per hour during June, July and August, 1934; that the flares burned during the daytime while the well was being produced, but that they would not be lighted while the well was being produced by the defendant at night. By calculation from Ramsey's testimony, that he observed the well being produced sixty-nine nights during June, July and August, 1934, with a capable production of 450 barrels per hour, at ten hours per night, would total 310,500 barrels, in addition to that produced during the day time. The amount accounted for to plaintiffs as shown in defendant's sworn answer filed in this suit, produced during the month of June, July and August, 1934, was 1,528.49 barrels. The amount reported in its sworn account to the state comptroller as being produced for the same period of time was 2,458.32 barrels, a discrepancy in its sworn accounts of 929.83 barrels. But taking defendant's highest figures, 2,458.32 barrels, subtracted from 310,500 barrels would leave 308,041.68 barrels produced by defendant (in excess of that accounted for) during the sixty-nine nights the well was specifically observed by the witness Ramsey during the months of June, July and August, 1934.

The facts clearly show that defendant produced oil from the church lot well in excess of that accounted for. The evidence as to the amount produced in excess of that accounted for is circumstantial, but it is cogent and amply sufficient to warrant a reasonable conclusion that the actual amount so produced and converted by defendant in excess of that accounted for was considerably more than the 275,000 barrels found by the jury. Their verdict appears to be very conservative. Though the facts and circumstances in evidence would warrant a conclusion that the amount of oil produced and unaccounted for by defendant was more than the amount found by the jury, just how much more or the exact amount of oil so produced and converted by defendant cannot be specifically determined from the evidence. Therefore the jury's answer to question No. 5, to the effect that the precise amount of oil so produced and converted from the church lot well by defendant could not be determined, is not in conflict with the jury's answer to question No. 2, finding that there was produced from said well, in excess of that accounted for, 275,000 barrels. The fact that the exact amount of oil produced and converted by defendant cannot be precisely determined is no reason for denying plaintiffs a recovery for their interest in the 275,000 barrels conservatively estimated by the jury. "The law requires only that the evidence be sufficient to enable the jury to estimate the loss or damages with reasonable certainty. Damages will not be disallowed merely because the amount thereof can be stated only approximately. Thus the fact that the exact number of logs lost by the plaintiff by reason of the defendant's unlawful obstruction of a stream cannot be definitely shown should not defeat his right of recovery." 13 T. J. 368, Sec. 210.

■ Appellant's second and fourth propositions in substance assert that, since plaintiffs discovered in March, 1934, that defendant was unlawfully converting their oil and did not file this suit until December, 1935, such was an unreasonable delay in filing the suit, and for that reason plaintiffs should not be allowed to recover the highest market value of the oil converted, from date of conversion to date of trial; and that the trial court committed reversible error in failing to submit to the jury an issue inquiring as to the highest market value of the oil from the date of conversion to the date of the trial. These two propositions are overruled because recovery was not awarded for the highest market value, $1.35 per barrel, from the date of conversion to the date of trial. The judgment is based upon the lowest market value, $1 per barrel, prevailing at the time of conversion of the oil for which recovery was had, established by undisputed evidence. As stated above, the specific acts of conversion for which recovery was had are shown to have occurred in the months of June, July and August, 1934. Defendant admittedly produced, sold to diverse oil companies, and accounted for some oil during each of the above named months, and for each and every month during the year 1934, all at the price of $1 per barrel, shown by its sworn answer and accounting in this suit, and by its sworn reports to the state comptroller. There is no evidence that any oil sold for less than $1 per barrel during the year 1934. The judgment being based upon the cash market value at the

time of conversion, which was shown to be $1 per barrel by undisputed evidence, and the admissions of the defendant, it was not necessary for the court to submit that issue to the jury. 41 T.J. 1027, Sec. 228. The judgment not being based upon the highest market value from the date of conversion to the date of trial, the defendant cannot complain at failure to submit that issue to the jury.

██ In discussing special issue No. 2, inquiring as to the amount of oil produced from the church lot well by defendant in excess of that accounted for to plaintiffs, one of the attorneys for plaintiffs in his argument to the jury in denouncing the secretive method used by defendant in producing and converting the oil in such manner as to prevent plaintiffs from showing the full amount produced, accused the officials of the defendant company in charge of the operations of the lease of being persons guilty of such conduct as is defined in Article 1410 of the Penal Code. The defendant objected to the argument as being inflammatory. The objection was overruled by the trial court, to which action the defendant excepted and assigns error. Unwarranted conclusions, abuse and criticism of parties, not based upon facts in evidence or fairly deducible therefrom, are condemned by our courts. 41 T.J. 310, Sec. 84. And where such character of argument is made use of the judgment should not be allowed to stand, unless it affirmatively appears that no prejudice resulted. Bell v. Blackwell, Tex.Com.App., 283 S.W. 765. But in the present case, the testimony of plaintiffs, and that of their witnesses, together with the physical conditions found upon the lease, strongly tends to prove a purposely designed method of secretly producing and disposing of the oil with intent to deprive plaintiffs of its value. We are therefore unable to say that the deduction drawn by the attorney is without support in the evidence, or that the remark made was inflammatory. It affirmatively appears from the record that no injury resulted to the defendant, for the jury is shown to have acted conservatively in answering the issue being discussed, by placing the amount at 275,000 barrels when the evidence before them was amply sufficient to have supported a reasonable conclusion that the amount was more than 300,000 barrels. The assignment is overruled.

██ Under its sixth proposition appellant contends that it established its alleged defense of accord and satisfaction against the appellees named as Trustees of the Shiloh Church and against the appellee F. D. Quinn. It appears that in March, 1935, defendant was indebted to the Trustees of the Shiloh Church and to F. D. Quinn for their portion of the ⅛ royalty for allowable oil produced, sold and accounted for, but not paid for, by defendant during the months of February, March, April, May, June, July and August, 1933, and August 1934. Same was not a part of the oil for which recovery was had in this suit. On March 20, 1935, defendant issued its check payable to the order of "E. E. Fischer, Attorney for trs. Lee Shiloh C. M. Church," in the sum of $318.36, on which was written the following: "in payment of full settlement of ½ royalty, Feb. March, April, May, June, July, August '33, and August 1934, according to statement rendered." On the same date a like check was issued by defendant payable to the order of "N. E. Hendrickson, Attorney for F. D. Quinn" for the amount of $159.18. Mr. Fischer testified on the trial of this case that at the time he received said check he was not attorney for and did not represent the Trustees of said Shiloh Church; that he accepted the check but that he did so in reliance upon defendant's representation that its statement correctly reflected the amount due. Mr. Hendrickson testified that at the time of receiving the check he was attorney for F. D. Quinn, but that he accepted it based upon the figures submitted by defendant of the pipe line runs, without any knowledge of any "extra" oil being run by defendant. It is the contention of appellant that the acts of the attorneys in accepting said checks upon which was written the above quoted memorandum, constituted, as a matter of law, a full and final settlement for any and all oil due said parties by appellant. Citing the case of Root & Fehl v. Murray Tool Co., Tex. Com.App., 26 S.W.2d 189, 75 A.L.R. 902. The facts here presented do not come within the rule announced in the case last cited. There is no evidence in the record showing that the oil here involved was under consideration in the acceptance of said checks. If any character of settlement was effected by said checks it was referable alone to the allowable oil lawfully produced and sold by defendant, for which it had rendered its statement and which had become a liqui-

dated demand, concerning which there was no dispute. "Payment by a debtor of a liquidated demand, presently due, and to which he has no defense which can be urged in good faith or with color of right, is not of itself sufficient consideration to sustain a discharge of other claims against the debtor." 1 T.J. 266, Sec. 26.

We will now discuss the separate decree in the judgment, wherein the trial court assessed and awarded the plaintiffs damages in the sum of $813.28, being the value of 1/8 of 6,506.26 barrels of oil admittedly produced by defendant from the Carlisle School lot well owned by it and in which plaintiffs had no interest and with which oil defendant intermingled plaintiffs' oil produced from the church lot well. Appellees contend that this decree is authorized by the rule announced in Union Naval Stores Co. v. United States, 5 Cir., 202 F. 491, affirmed in 240 U.S. 284, 36 S.Ct. 308, 60 L.Ed. 644, to the effect that where defendant has wilfully converted property and mixed it with his own so that the amount converted cannot be determined with reasonable certainty, plaintiff may recover for the whole mass.

Whether such a rule might be applied in this state in some circumstances is a matter not necessary for us to determine. It was not applied in the case cited, and such a rule is not applicable to the facts of this case—for the same reason that it was not applied in the case cited. In the present case, as in the case cited, there was evidence from which the jury could form a reasonably certain estimate of the amount of the property converted. In such circumstances judgment should be, as was decided in the case cited, for the amount of such estimate. The fact that the jury's estimate was conservative, and that the evidence would have supported a verdict in a larger amount, and that the precise amount converted could not be determined, would not warrant the action of the court in assessing damages in favor of plaintiff in the amount of the value of 1/8 of defendant's said 6,506.26 barrels of oil, in addition to the damages assessed upon the verdict of the jury. Said separate decree will be reversed and stricken from the judgment. In all other respects the judgment will be affirmed.

Reformed, and as reformed affirmed.